IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**OLIVIA DEAN, ADMINISTRATRIX OF
THE ESTATE OF JAMES DEAN,**

      **Plaintiff,**

v.                                          **CIVIL ACTION NO. 3:21-CV-00197**
                                                **Judge:  Robert C. Chambers**

**CITY OF KENOVA
(Kenova Police Department),
OFFICER CHARLES NEWMAN,
BOB SULLIVAN,
and JOHN/JANE DOES,**

      **Defendants.**

**RESPONSE TO DEFENDANT OFFICER CHARLES NEWMAN'S
MOTION FOR SUMMARY JUDGMENT**

      This action involves the wrongful death of James Dean.  Mr. Dean was arrested on April 5, 2019. He was being transported to the Kenova Police Department for booking when he was severely injured by Officer Charles Newman, who forcibly knocked Mr. Dean to the ground while he was handcuffed. It is undisputed that at the time of the events giving rise to Mr. Dean's death, he was handcuffed with his hands behind his back. Furthermore, it is undisputed that Mr. Dean never touched, punched, grabbed, or kicked any of the Defendants, including Officer Newman, at the time of the events giving rise to his injury, nor did he attempt to flee.

      Mr. Dean was arrested on April 5, 2019, at his home and died at Cabell Huntington Hospital on April 22, 2019, from a subdural hematoma caused as a result of blunt

force trauma to his head. It is undisputed that this blunt-force trauma to Mr. Dean's head occurred during a takedown while he was handcuffed with his hands behind his back. During the takedown, Mr. Dean struck his head on the concrete. It is undisputed that Defendant, Officer Charles Newman, caused Mr. Dean to suffer blunt force trauma to his head.

Officer Charles Newman has moved for summary judgment related to the Plaintiff's claim under 42 U.S.C. §1983. This motion should be denied.

## Statement of Facts

On April 5, 2019, Olivia Dean called 911 as her son had been drinking; she was hoping that the police would arrest him. Exhibit 1, Dean Depo. p. 78-79. Officer Newman responded to the call. Exhibit 2, Newman Depo. p. 14. There were officers from Ceredo on the scene. Id. at 14. Mr. Dean was handcuffed, placed in Officer Newman's vehicle, and taken to the Kenova Police Department for booking. Id. at 49.

After Officer Newman drove Mr. Dean to the Kenova Police Department, the two exited the vehicle. Newman Depo. p. 50-51. As Mr. Dean was handcuffed and standing at the sally port door, Officer Newman knocked Mr. Dean backward, causing him to strike his head. Newman Depo. p. 67-68. p. 75-76. Mr. Dean was taken by ambulance to Cabell Huntington Hospital, where he subsequently died from that hemorrhage on April 22, 2019. The cause of death in the autopsy report is consistent with the injuries caused by Officer Newman. Exhibit 3, Autopsy Report.

According to Kenova's Chief of Police, Robert Sullivan, the Municipal Building and Police Department are equipped with video surveillance with about 12-14 cameras. Exhibit 4, Sullivan Depo. p. 17. Prior to filing a lawsuit, counsel for Mrs. Dean requested any surveillance video for the night of the incident. Exhibit 5, Tiano letter dated January 19, 2021.

Chief Sullivan wrote back and denied the existence of any recoverable video. Exhibit 6, Sullivan letter dated January 25, 2021. However, during discovery, a video clip was produced. Despite the fact that Mr. Dean was taken immediately from the city building to Cabell Huntington Hospital due to a use of force incident, the Chief of Police, Bob Sullivan, did not preserve the video. He admitted that it was his responsibility to maintain the video. Exhibit 4, Sullivan Depo., p. 36. Officer Sullivan claims he contacted Tri-State Security and asked for a technician to download the video. Exhibit 4, Sullivan Depo. p. 26. Seth Steinhauer of Tri-State Security Systems sold and installed the video DVR and cameras at issue. The company was available to assist the Kenova Police Department with any download of video or technical issues. Exhibit 7, Tri-State Security Letter. Mr. Steinhauer would not respond to the City of Kenova's request for technical support without a work order. Exhibit 8, Steinhauer Depo. p. 64. Mr. Steinhauer does not have any evidence that Chief Sullivan or anyone from the City of Kenova called regarding downloading the video surveillance involving James Dean's takedown in front of the sally port. See Exhibit 8, Steinhauer Depo. p. 28. There is no work order. See Exhibit 7. Lastly, Mr. Steinhauer testified that he would typically leave the manual on the DVR when it was installed. Id. at p. 40. Logically, Chief Sullivan or someone at the Coty of Kenova could have downloaded the video if they wanted to. There can only be one conclusion. It was not beneficial to the Defendants, particularly Officer Newman.

## Argument

A.  **Standard of Review**

In ruling on a motion for summary judgment, courts must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 158-59 (1970). Even where the facts are undisputed, summary judgment should

3

be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Id.* "Creditability determinations, the weight of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242-255 (1986). See generally *Tolan v. Cotton*, 572 U.S. 650-657 (2014)(per curium)("Our qualified immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard.")

Special caution should be exercised in cases where an alleged use of excessive force results in death least Defendants benefit from killing their victims. As the Court observed in *Scott v. Heinrich*, 39 F.3d 912, 915 (9th Cir. 1994);

> [T]he judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story – the person [who is] dead – is unable to testify. The judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the offer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with known facts.

*Accord Koon v. Prince George's County,* 219 U.S. Dist. Lexis 47698 at *8-9 (D. Md. 2019).

Summary judgment is often inappropriate in excessive force cases because the evidence surrounding the officer's use of force is susceptible to different interpretations, and the parties have different recollections of what occurred. *Scott v. Harris*, 550 U.S. 372, 380 (2007)(holding that party's position was contradicted by videotape of incident, requiring court to reject party's position on what occurred and instead rely on videotape).

**B.	42 U.S.C. §1983**

Counts I, III, and IV and of the Plaintiff's Complaint allege violations of 42 U.S.C. §1983 which provides that:

4

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In response to this Count, Defendant has argued that he is protected by the defense of qualified immunity, which protects law enforcement officers unless they have violated clearly established legal standards of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). See also *Tolan v. Cotton*, 654 U. S. 650, 654 (2014) (per curiam) ("[Qualified immunity] immunizes government officials from damages suits unless their conduct has violated a clearly established right."). The continued vitality of this doctrine is increasingly being questioned, but even if it applies, the Defendant, in this case, has violated a clearly established legal standard, which has been recognized for decades, and should have been known to any member of law enforcement, including the Defendant.

The Plaintiff brought a claim under 42 U.S.C. 1983 against Officer Newman for the use of excessive force. In response, Defendant has argued he is entitled to the defense of qualified immunity, which protects law enforcement officers unless they have violated clearly established legal standards of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a qualified immunity defense is raised, Courts apply a two-step test in the Fourth Circuit. First, whether the facts viewed in the Plaintiff's favor make out a violation of her son's constitutional rights, and second, whether that violation was clearly established at the time. *Id.* at 231. In the Fourth Circuit, the burden of proof lies first with the Plaintiff, then with the defense in the two-prong step analysis. The Plaintiff bears the burden of

the first prong, and the officer bears the burden of the second prong. See *Henry v. Purnell*, 501 F.3rd 374 (4th Cir. 2007).

In the case at hand, there is partial video evidence of what occurred before Mr. Dean was injured. A copy of the video produced during discovery is attached as Exhibit 9. The video shows that Mr. Dean and Officer Newman came face to face for a matter of seconds before the takedown. Officer Newman claims Mr. Dean may have headbutted him or he may have tried to run through him and he had the potential to use his legs. Exhibit 2, Newman Depo. p. 58. The video evidence is clear. Mr. Dean did not try to run or headbutt the officer. The video demonstrates Officer Newman grabbed Mr. Dean's arm and spun him to come face to face. Then, in about a second, he tackles Mr. Dean, who strikes his head on the concrete. Mr. Dean was handcuffed during this entire episode. Courts should be careful at summary judgment to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence. See *Ingle v. Ex Rel. Est. of Ingle v. Yelton*, 439 F.3rd 191, 195 (4th Cir. 2006); see also *Brown ex rel. Lawhorn v. Elliott*, 876 F.3rd 637, 641 (4th Cir. 2017)(emphasizing the importance of drawing inferences in favor of the non-movant, even when . . . a court decides only the clearly established wrong). In a case such as the one involving Mr. Dean, it would be easy to overvalue the narrative testimony of the officer and undervalue the contradictory physical evidence. See *Scott v. Henrich*, 39 F.3rd 912, 915 (9th Cir. 1994)(the Judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story is unable to testify). The video tells the story.

Kenova Police Department Use of Force General Order 83-2002, Paragraph D, attached as Exhibit 10, outlines the level of force officers are authorized to use. Officer Newman was permitted to use Level 1, verbal persuasion, or Level 2, physical force, taking

suspect/prisoner by the arm as a physical type of persuasion (based on the level of resistance that he believed Mr. Dean was exhibiting.) Since Mr. Dean died due to the injuries he sustained, Defendant, Chief Bob Sullivan, completed an investigation on the use of force and concluded that law enforcement instructors did not teach the tactics used by Officer Newman. Chief Sullivan wrote, "Officer Newman attempted to gain control of the prisoner by placing hands on the prisoner and pushing him to the ground." Exhibit 11, Parole Activity Report. As a result, Mr. Dean suffered an 8-inch curvilinear skull fracture and multiple subdural and subarachnoid hemorrhages and died. The video shows a defenseless man was tackled to the ground without reasonable justification suffering a severe head injury that caused his death.

In order to prevail in a §1983 claim, a Plaintiff must show that a Defendant deprived him of the rights secured by the Constitution and laws of the United States when the Defendant acted under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Excessive force claims against law enforcement officers in the course of an arrest, investigatory stop, or other "seizure" of a person are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388-389 (1989). Officer Newman stated his intent was to take Mr. Dean to the ground. Exhibit 2, Newman Depo. p. 68. Mr. Dean never headbutted him. Exhibit 2, Newman Depo. p. 69. Mr. Dean was not trying to run through the Defendant. He stated that he took a handcuffed prisoner to the ground with the least amount of possible force. Exhibit 2, Newman Depo. p. 70.

Chief of Police Sullivan conducted an internal investigation of this use of force incident. He is required to do this by regulation. Although he completed the investigation, Chief Sullivan indicates that he is still researching whether the maneuver used by Officer Newman is sanctioned by law enforcement. Exhibit 4, Sullivan Depo. p. 42-43. Chief Sullivan stated that if

you want to take a handcuffed person to the ground, you must do it as safely as possible. Exhibit 4, Sullivan Depo. p. 43-44. Moreover, Chief Sullivan admitted that he has the duty and responsibility to maintain the video evidence regarding the incident involving James Dean. Exhibit 4, Sullivan Depo. p. 36.

   Attached as Exhibit 12 is an Affidavit from Plaintiff's expert, Roy Taylor. Mr. Taylor is experienced in law enforcement procedures, protocols, and techniques with regard to arrests. See *Cacciolo v. McFall*, 561 Fed App'x 535 (7th Cir. 2014) (expert testimony about proper police practices and the factors relevant to the hypothetical use of force properly admitted). He has reviewed the documents provided by the City of Kenova, depositions, and the video. Mr. Taylor has served for 40 years as a law enforcement officer, patrol officer, investigator, instructor, and chief of police. It is Mr. Taylor's opinion that the force used by Officer Newman did not follow generally accepted law enforcement training standards, as well as the Kenova Police Department policies on the use of force. Id. at Paragraph 12.   Mr. Dean did not pose an immediate threat to the safety of the officer or others and did not resist arrest. Id. at Paragraph 12.   Mr. Taylor also states the acts of Officer Newman on the night in question constituted an inappropriate use of force. Id. at Paragraph 12. Even without Mr. Taylor's testimony, a layperson could determine Officer Newman's use of force was excessive. See *Florek v. Vill. Of Mundelein, Ill.,* 649 F.3d 594 (7th Cir. 2011) (what a reasonable police officer would have known and done is adequately comprehensible by laypeople).

   Officer Newman relies on *Mitchell v. Richter*, 2017 WL 751262 (E.D. Wis.), Civil Action No. 15-CV-1520, as support for his motion. In *Richter*, a Wisconsin Federal Court examined a case brought by a pro se Plaintiff. Inmate Mitchell was a pretrial detainee who brought claims against a correctional officer and a physician and nurses who were employed by

8

Advanced Correctional Healthcare, Inc.  Mr. Mitchell brought claims surrounding a correctional officer pushing him into his cell. Surveillance video showed inmate Mitchell was in his cell for approximately an hour and a half and did not exhibit any signs of acute distress or serious injury. Mitchell then made requests for medical care which were ignored by the healthcare Defendants as well as the correctional officers. In analyzing the excessive force claim, the Court dismissed inmate Mitchell's claim as he had no evidence he was ever injured and because the video footage utterly discredited his allegations about correctional officer Richter's push into his cell. *Id.* The Court went on to assess costs against the inmate.

   The Defendant's reliance on *Davis v. Leginza*, 2021 WL 1172599, (N.D. Ill.) Civil Action No. 16-CV-10763 is misplaced. In *Davis*, the Court examined a case where the inmate aggressively fought against a correctional officer by shrugging his shoulder, kicking water, and making movements while the officer was moving him. Another correctional officer stated that the inmate was resisting him by kicking up water, jerking his body, yelling, and screaming. The officer pushed the inmate against the wall and eventually had to use his Taser. There was video evidence to support this from an officer's bodycam. However, the Court denied summary judgment regarding the second use of the Taser. *Id.*

   These factual scenarios are not analogous to Mr. Dean's case. Even a cursory review of the video evidence indicates that Officer Newman either spun Mr. Dean to his side and confronted him face to face or Mr. Dean stopped and turned to face Officer Newman. Within approximately one second, Officer Newman tackles Mr. Dean. There was no de-escalation or other attempt to gain control, assuming it was necessary for what Officer Newman perceived as a threat, other than to tackle a handcuffed man causing him to fall backward and violently strike his head on the concrete.

9

The Fourth Amendment protects the right of people to be secure in their persons against unreasonable search and seizure. U.S. Const. Amend. IV. Arrests or seizures of persons must be reasonable under the circumstances. *Ashcroft v. al-Kidd,* 563 U.S. 731 (2011). A police officer must use the amount of force that a reasonable officer would think necessary to take a person into custody. *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). Clearly, Officer Newman overstepped his authority and used excessive force by tackling a handcuffed man to the ground, causing Mr. Dean's death. A genuine issue of material fact exists as to whether Mr. Dean's constitutional rights were violated.

WHEREFORE, Olivia Dean, as Administratrix of the Estate of James Dean, respectfully requests that Defendant Officer Charles Newman's Motion for Summary Judgment is denied and for such other and further relief as this Honorable Court deems appropriate.

**OLIVIA DEAN,
ADMINISTRATRIX OF THE
ESTATE OF JAMES DEAN**

**By Counsel**

/ s/ William M. Tiano
William M. Tiano (WVSB # 4308)
TIANO O'DELL PLLC
Post Office Box 11830
Charleston, West Virginia  25339
(304) 720-6700
wtiano@tolawfirm.com

/s/ Paul M. Stroebel
Paul M. Stroebel (WVSB# 5758)
Stroebel & Stroebel, PLLC
Post Office Box 2582
Charleston, WV  25329-2582
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**OLIVIA DEAN, ADMINISTRATRIX OF**
**THE ESTATE OF JAMES DEAN,**

    **Plaintiff,**

v.                                       **CIVIL ACTION NO. 3:21-CV-00197**
                                            **Judge: Robert C. Chambers**

**CITY OF KENOVA**
**(Kenova Police Department),**
**OFFICER CHARLES NEWMAN,**
**and JOHN/JANE DOES,**

    **Defendants.**

## CERTIFICATE OF SERVICE

       I, William Tiano, counsel for Plaintiff, do hereby certify that I have this 18th day of April, 2023, served the foregoing RESPONSE TO DEFENDANT OFFICER CHARLES NEWMAN'S MOTION FOR SUMMARY JUDGMENT upon counsel of record by CM/ECF which will automatically cause an electronic copy to be delivered to the following counsel:

        Perry W. Oxley, Esq.
        David E. Rich, Esq.
        Samantha J. Fields, Esq.
        Oxley Rich Sammons, PLLC
        P. O. Box 1704
        Huntington, WV  25718

                                                /s/ William M. Tiano
                                                William M. Tiano (Bar No. 4308)
                                                TIANO O'DELL PLLC
                                                Post Office Box 11830
                                                Charleston, West Virginia  25339
                                                (304) 720-6700