IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OLIVIA DEAN, Administratrix of
the Estate of JAMES D. DEAN,

                           Plaintiff,

v.                                                  CIVIL ACTION NO.  3:21-0197

CITY OF KENOVA,
(Kenova Police Department),
OFFICER CHARLES NEWMAN,
BOB SULLIVAN, and
JOHN/JANE DOES,

                           Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants City of Kenova, Bob Sullivan, and John/Jane Does' Motion for Summary Judgment (ECF No. 136) and Defendant Newman's Motion for Summary Judgment (ECF No. 138). On May 16, 2023, the Court summarily **DENIED** the motions for summary judgment as to the claims against Defendants Newman and Sullivan. ECF No. 159. In support of that decision, the Court issues the following Memorandum Opinion and Order.

For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants City of Kenova, Bob Sullivan, and John/Jane Does' Motion for Summary Judgment (ECF No. 136). The Court **GRANTS** this Motion insofar as it requests dismissal of Counts III, IV, and VI against Defendants City of Kenova and John/Jane Does and **DENIES** it insofar as it requests dismissal of Count V against Defendant Sullivan. *Id.* Additionally, the Court **DENIES** Defendant's Newman's Motion for Summary Judgment on Counts I and II (ECF No. 138).

**BACKGROUND**

Decedent James Dean was arrested by Defendant Charles Newman, an officer with the City of Kenova Police Department, following a disturbance at Mr. Dean's residence on April 5, 2019. Am. Compl. ¶ 1, ECF No. 12; Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at 1, ECF No. 139. When he arrived at the scene, Officer Newman was allegedly advised that Mr. Dean had struck another officer, was combative while being placed in handcuffs, and made threatening statements to a responding officer. Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at 6, ECF No. 139. Officer Newman transported Mr. Dean to jail, alleging that Mr. Dean became combative during the drive and threatened to murder him. *Id.* at 1.

While walking Mr. Dean into the sally port of the police station, Officer Newman alleges that Mr. Dean "assumed an aggressive posture" such that Officer Newman believed that Mr. Dean was going to harm him. *Id.* Officer Newman then took Mr. Dean to the ground. *Id.* Mr. Dean was handcuffed at the time and struck his head on the concrete floor. Resp. of Def. Newman's Mot. for Summ. J. at 1-2, ECF No. 148. Though the details of this takedown are in dispute, both parties seem to concede that it resulted in a single blow to the head. *Id*. Plaintiff initially alleged that Jane/John Does either participated in beating Mr. Dean themselves or witnessed a beating and failed to intervene on Mr. Dean's behalf. Am. Compl. ¶ 17, ECF No. 12. Since this allegation, Plaintiff's non-retained expert witness, Dr. Savasman, has testified that Mr. Dean's injuries are consistent with a single blow to the head, Other Defs.' Mem. of L. in Supp. of Their Mot. for Summ. J. at 4-5, ECF No. 137, and Plaintiffs have voluntarily withdrawn their claims against John/Jane Does, Resp. of Def. Newman's Mot. for Summ. J. at 3-4, ECF No. 148.

Following Mr. Dean's injury, emergency services were contacted, and Mr. Dean was transported to Cabell Huntington Hospital. Mem. of L. in Supp. of Def. Newman's Mot. for Summ.

J. at 1-2, ECF No. 139. In the initial hours following his admission, Mr. Dean was allegedly "awake, alert, conversant, and combative with hospital staff." *Id.* at 2. Mr. Dean received several procedures at the hospital, including an emergency craniotomy, intubation, and sedation—however, after seventeen days there, he passed away of a subdural hematoma caused by blunt force trauma to his head. *Id.* at 2; Resp. of Def. Newman's Mot. for Summ. J. at 1-2, ECF No. 148.

While a surveillance system initially captured Mr. Dean's injury, only a short, blurry cell phone video that captures the original footage exists today. Ex. 9, ECF No. 151. Defendant Bob Sullivan, chief of police of the City of Kenova Police Department, testified that he watched the surveillance footage close to the time of Mr. Dean's injury. Pl.'s Resp. to Other Defs.' Mot. for Summ. J. at 4-7, ECF No. 154. Chief Sullivan claims that he eventually contacted Tri-State Security Systems to arrange preserving the footage, though by the time Tri-State responded to this request, the footage was gone. *Id.* at 6, 8; Other Defs.' Mem. of L. in Supp. of Their Mot. for Summ. J. at 9, 11, ECF No. 137. Testimony from Mr. Steinhauer, a Tri-State employee, establishes that at the time of the incident, Tri-State had switched over to a new surveillance system with a shorter writeover rate and that footage was erased every five-to-seven days, as opposed to its previous thirty-day rate. Other Defs.' Mem. of L. in Supp. of Their Mot. for Summ. J. at 9-12, ECF No. 137. Mr. Steinhauer did not recall ever informing the police department of this change. *Id.* at 10-11. During discovery, a cell phone video recording of the surveillance footage was recovered, though it is not clear whose phone it was obtained from. *Id.* at 12. The cell phone video is short and blurry and only depicts a few seconds prior to Mr. Dean's injury. Ex. 9, ECF No. 151.

In the instant action, Plaintiff, the administratix of Mr. Dean's estate, brings six claims against Defendants. Am. Compl., ECF No. 12. Three counts arise under 42 U.S.C. § 1983: Counts I and III allege a Fourth Amendment violation against Officer Newman and John/Jane Does,

respectively, and Count IV alleges a deliberate indifference claim against the City of Kenova. *Id.* The additional claims include a state law claim for reckless/malicious conduct against Officer Newman (Count II), a state law spoliation/fraud claim against Chief Sullivan (Count V), and a negligence claim against the City of Kenova (Count VI). *Id.* In their respective motions for summary judgment, Defendants argue that summary judgment is warranted as to all claims against them. Defs. City of Kenova, Sullivan, and Does' Mot. for Summ. J., ECF No. 136; Def. Newman's Mot. for Summ. J., ECF No. 138.

## LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## DISCUSSION

As a preliminary matter, the Court acknowledges that Plaintiff has voluntarily withdrawn Counts III and IV, which allege § 1983 claims for excessive force against John/Jane Does and for deliberate indifference against the City of Kenova, respectively. *See* Pl.'s Resp. to Other Defs.' Mot. for Summ. J. at 2, ECF No. 154. Accordingly, Counts III and IV are **DISMISSED**.

Turning to the remaining counts, the Court declines to dismiss Counts I and II against Defendant Newman and Count V against Defendant Sullivan, finding that there are material issues of fact that preclude summary judgment. The Court does, however, grant summary judgment to the City of Kenova as to Count VI, as the City is  immune from liability under West Virginia Code § 29-12A-5(a)(5). The Court addresses each of these claims below.

I.   Count I

In his motion to dismiss, Officer Newman argues that qualified immunity shields him from Count I, which states a claim for a violation of Mr. Dean's Fourth Amendment right to be free from unreasonable search and seizures and unreasonable intrusions on his bodily integrity. Am. Compl. ¶ 8, ECF No. 12. In assessing whether qualified immunity is warranted, courts apply a two-step test. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). First, they determine "whether the facts viewed in [the plaintiff's] favor make out a violation of constitutional rights, and second, whether that violated right was clearly established at the time." *Id.* The plaintiff bears the burden of proving the first prong, and the

defendant bears the burden of proving the second.[1] *Id.* The Court addresses each step of the federal qualified immunity analysis below.

### A.   Constitutional violation

Officer Newman first argues that he is entitled to qualified immunity because the force he used against Mr. Dean was not objectively unreasonable. Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at Sec. III.A.1, ECF No. 139. In use of deadly force claims, courts examine objective reasonableness by considering "whether the hypothetical reasonable officer in that situation would have had 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others.'" *Stanton*, 25 F.4th at 233 (quoting *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005)). This analysis should focus on the "moment that deadly

---

[1] Officer Newman argues that the plaintiff bears the burden of proving both the first and the second prong of the qualified immunity analysis. Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at 11, ECF No. 139 (citing *City of Tahlequah v. Bond*, 142 S. Ct. 9, 12 (2021)). In doing so, he cites *City of Tahlequah*, in which the Supreme Court found that a right was not clearly established where the plaintiff and the panel had not been able to identify "a single precedent finding a Fourth Amendment violation under similar circumstances." 142 S. Ct. at 12. Later, in his Reply, Officer Newman cites *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021), for the same proposition. Reply to Pl.'s Resp. to Def. Newman's Mot. for Summ. J. at 8, ECF No. 155. However, these cases arise out of different circuits. The Fourth Circuit allocates the burdens of proof in the qualified immunity analysis differently than the Ninth and Tenth Circuits. *Compare Stanton,* 25 F.4th at 233 ("In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong."), *and Bygum v. City of Montgomery*, No. 21-2130, 2023 WL 2203591, at *4 (4th Cir. Feb. 24, 2023) ("The burden of proof in this circuit is the plaintiff's on the first question and the defendants' on the second."), *with Crittenden v. City of Tahlequah*, 786 Fed. App'x 795, 800 (10th Cir. 2019) ("In the face of a qualified immunity defense, the plaintiff must carry a heavy burden to show that: (1) defendant's actions violated a constitutional right, and, if so, (2) the right was clearly established at the time of defendant's unlawful conduct."), *and Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("The plaintiff bears the burden to show that the contours of the right were clearly established."). This Court follows the clear precedent set down by the Fourth Circuit: the burden of proving a right has not been clearly established falls on the defendant.

force was used," as "the justification for deadly force can fall away in seconds." *Id.* (citations omitted). In doing so, courts should "avoid hindsight bias," *id.*, and "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

Viewing the facts in a light most favorable to Plaintiff, however, there are genuine questions of material fact as to whether Officer Newman had probable cause to believe that Mr. Dean posed a threat of serious, physical harm. Namely, based on the recovered cell phone video, a reasonable jury may doubt Officer Newman's assertion that Mr. Dean "was squaring off to assume a combative stance" and "was learning toward" him in the seconds preceding Mr. Dean's injury. Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at 7, ECF No. 139. Further, as the Fourth Circuit cautioned in *Stanton*, courts confronted with deadly force cases "should be careful at summary judgment to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence." 25 F.4th at 234. Here, in light of the video, there is a genuine question of material fact as to whether Defendant Newman's story is true and subsequently, whether his actions were objectively reasonable.

### B. Clearly established analysis

Officer Newman then argues that he is entitled to qualified immunity even if his actions were objectively unreasonable—he claims that Plaintiff cannot point to any specific case that would put him on notice as to his conduct, meaning that Plaintiff cannot show any violation of a clearly established right. Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at Sec. III.A.2., ECF No. 139. "A right is clearly established only if its contours are sufficiently clear that 'a

reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Though the Supreme Court has cautioned courts against defining the right at too "high [a] level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), the Fourth Circuit has held that "clearly established 'includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked.'" *Bygum*, 2023 WL 2203591, at *6 (quoting *Wall v. Wade*, 741 F.3d 492, 502–03 (4th Cir. 2014)).

Accordingly, "the test is not whether 'the very action in question has previously been held unlawful,'" but rather "whether pre-existing law makes the unlawfulness of an act 'apparent.'" *Id.* (citing *Clem v. Corbeau*, 284 F.3d 543, 555 (4th Cir. 2002)). This means "government officials can be expected to know that if X is illegal, then Y is also illegal, despite factual differences between the two." *Id.* (quoting *Williams v. Strickland*, 917 F.3d 763, 770 (4th Cir. 2019)). Moreover, a defendant could violate a clearly established constitutional right even if faced with a novel circumstance, "so long as the law provided 'fair warning' that their conduct was unconstitutional." *Id.* (quoting *Booker v. SC Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017)).

Here, Officer Newman has not met his burden of showing that the constitutional right at issue was not clearly established. He cites two cases, *Mitchell v. Richter*, No. 15-CV-1520-JPS, 2017 WL 752162, at *9 (E.D. Wis. Feb. 27, 2017), and *Davis v. Leginza*, No. 16-CV-10763, 2021 WL 1172599, at *3 (N.D. Ill. Mar. 29, 2021), for the proposition that "simply pushing a noncompliant inmate does not run afoul of the constitution." Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at 12, ECF No. 139. However, these cases are not instructive— neither arises out of the Fourth Circuit, and both are factually inapposite to the circumstances here. For example, in *Mitchell*, surveillance footage showed that the officer had only lightly pushed the

plaintiff into a cell, and that the plaintiff only "took one overlong stride" as a result. 2017 WL 752162, at *4, *4 n.7. Likewise, in *Davis*, video footage showed that the plaintiff was actively and repeatedly resisting a police escort by shrugging his shoulders, attempting to pull away, and kicking water at the officers. 2021 WL 1172599, at *2-3. Here, unlike the officer in *Davis* who only lightly pushed an inmate, Officer Newman tackled a handcuffed Mr. Dean to ground, leaving Mr. Dean's head exposed. And here, unlike the plaintiff's continuing efforts to resist officers in *Davis*, Mr. Dean does not appear to be actively resisting arrest at the time he was tackled.

Even if the burden were not on the defendant, the Court would still find that Fourth Circuit precedent provides fair warning that knocking a handcuffed, nonthreatening, and unarmed individual to the ground violates a clearly established constitutional right. For example, in *Jones v. Buchanan*, 325 F.3d 520 (4th Cir. 2003), officers violated a plaintiff's clearly established constitutional rights when they knocked him to the ground and jumped on him. *Id.* at 524, 531. Even though the plaintiff was trying to move his handcuffed hands to the front of his body at the time, the Fourth Circuit held that the force used was unreasonable because the plaintiff (1) was neither armed, nor suspected to be armed, (2) did not pose any immediate threat to anyone until officers entered the processing room, and (3) was handcuffed at the time. *Id.* at 528-29. That the plaintiff was handcuffed factored heavily into the Fourth Circuit's analysis—in so finding, the Court relied on *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), to reason that where an officer allegedly assaulted a handcuffed plaintiff "it is difficult to discern 'any legitimate law enforcement need' for the force applied." *Jones*, 325 F.3d at 529-30 (citing *Lee*, 284 F.3d at 1198). Likewise, in *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015), the Fourth Circuit found an officer had violated a plaintiff's clearly established constitutional rights when he, *inter alia*, yanked her up by her ponytail while she was handcuffed and had no reason to suspect that she was armed. *Id.* at 103

(finding that the officer could not "justify yanking [the plaintiff] up by her hair once she was handcuffed and under his control"); *see also Rowland v. Perry*, 41 F.3d 167, 171 (4th Cir. 1994) (finding a violation of a clearly established constitutional right where plaintiff instinctively tried to escape an officer's grasp and the officer responded by punching the plaintiff and throwing him down).

Because (1) Plaintiff has shown there is a material question of fact as to whether the force used was objectively reasonable, and (2) Officer Newman has failed to show that the constitutional right was not clearly established, the Court finds that Officer Newman is not entitled to qualified immunity. Accordingly, the Court **DENIES** Officer Newman's Motion for Summary Judgment as to Count I. ECF No. 138.

## II.   Count II

In Count II, Plaintiff alleges a state law claim for reckless and malicious conduct. *Id.* ¶¶ 11-13. Officer Newman argues that this count fails because there is no evidence that his use of force was unreasonable. Mem. of L. in Supp. of Def. Newman's Mot. for Summ. J. at 13, ECF No. 139. He also contends that summary judgment is warranted as to this claim, because Plaintiff does not directly address it in her Response. Reply to Pl.'s Resp. to Def. Newman's Mot. for Summ. J. at 1-2, ECF No. 155. For reasons discussed in Sec. I.A., *supra*, this argument does not hold weight. The Court finds there are material questions of fact as to whether Officer Newman's conduct was objectively reasonable and likewise, whether it was malicious or reckless in nature. Counts I and II hinge on the same set of operative facts, so a material question of fact as to one implicates a material question of fact as to the other. In responding to Officer Newman's arguments as to the objective reasonableness analysis in Count I, Plaintiff also establishes that there are material questions of fact as to whether Officer Newman's actions were malicious or reckless. *See* Resp. to

Def. Newman's Mot. for Summ. J. at 6-9, ECF No. 148. The Court, therefore, **DENIES** Officer

Newman's Motion for Summary Judgment as to Count II. ECF No. 138.

III.      Count V

        Count V, which states a spoliation/fraud claim against Defendant Sullivan, also survives.

A state law claim for intentional spoliation of evidence requires proof of the following elements:

(1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential

civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's

ability to prevail in the pending civil action; (5) the intent of the spoliator to defeat a party's ability

to prevail in the civil action; and (6) damages. Syl. Pt. 8, *Hannah v. Heeter*, 584 S.E.2d 560 (W.

Va. 2003).

        Plaintiff argues there are material issues of fact as to this count that preclude summary

judgment. Pl.'s Resp. to Other Defs.' Mot. for Summ. J. at Sec. III.A., ECF No. 154. She claims

that Chief Sullivan's deposition testimony establishes that he was aware of a potential civil action

and the importance of the video in that action. *Id.* at 4-5. Plaintiff further contends that Chief

Sullivan's intent to destroy the evidence can be inferred by his response to her FOIA request, in

which he claimed there was no recoverable video of the incident. *Id.* at 8. Defendants respond that

the record fails to show that any spoliation was intentional, given that Tri-State Security changed

the surveillance system months before the incident and there is no evidence that Chief Sullivan

was aware of the effects of this change. Other Defs.' Mem. of L. in Supp. of Their Mot. for Summ.

J. at Sec. III.C., ECF No. 137.

        The Court finds that there are material questions of fact as to whether the spoliation was

intentional. At the motions hearing on May 16, 2023, defense counsel argued that there is no

evidence that Chief Sullivan knew how to operate the surveillance system, was aware of the

timeline in which it had to be preserved, or knew that the footage would be important in a pending civil action. However, given Chief Sullivan's failure to timely preserve the footage, his denial that there was any recoverable footage of the incident in his FOIA response, and the fact that the surveillance system manual was likely onsite, a reasonable jury could find that Chief Sullivan willingly let the footage be erased, knowing that it could be important in a pending civil action. Finally, though neither party mentioned it at the motions hearing on May 16, 2023, the Court observed that in the recovered cell phone video, a voice can be heard saying, "You might be able to get that out on the drive. I don't know" and then another voice responding, "No. This is way faster." Ex. 9, ECF No. 151. This means that at least one individual who viewed the original surveillance footage recognized that (1) it could be downloaded onto the drive and preserved, (2) the footage was important enough to warrant preserving. Given these facts, a reasonable jury could find that Chief Sullivan's failure to preserve the footage constitutes willful destruction of it.

Finally, Chief Sullivan argues there is no evidence that the spoliated footage was vital to Plaintiff's ability to prevail or that Plaintiff suffered any damage as a result. Other Defs.' Mem. of L. in Supp. of Their Mot. for Summ. J. at 12, ECF No. 137. Namely, he contends that the allegedly spoliated footage cannot be vital because the alternate video clip was produced. Other Defs.' Reply to Pl.'s Resp. at 2, ECF No. 156. This argument fails, however—the available video clip provides only a short, blurry insight into the seconds immediately preceding Mr. Dean's injury, and Newman claims that Mr. Dean was moving in a threatening manner while being led into the doorway. Being able to view the surveillance footage directly would have given the trier of fact a more complete, clearer insight into the events leading up to Mr. Dean's injury. Such insight could have been vital to Plaintiff's case.

Because there are material questions of fact regarding Plaintiff's claim for spoliation, the Court **DENIES** Defendant Sullivan's Motion for Summary Judgment as to Count V. ECF No. 136.

IV.    Count VI

Defendant City of Kenova is not liable for Count VI, however, as they are immune from liability under West Virginia Code § 29-12A-5(a)(5). Count VI alleges a negligence claim against the City of Kenova for Defendant Newman's alleged excessive force and Defendant Sullivan's alleged spoliation of evidence. Am. Compl. ¶ 35, ECF No. 12. It arises under West Virginia Code § 29-12A-4(c)(2), which provides that political subdivisions are liable for damages caused by the negligence of employees acting within the scope of their employment. Pl.'s Resp. to Other Defs.' Mot. for Summ. J. at 9, ECF No. 154.

Defendant argues it is immune from liability because "the loss or claim results from  . . . the failure to provide, or the method of providing, police, law enforcement or fire protection." Other Defs.' Mem. of L. in Supp. of Their Mot. for Summ. J. at 13, ECF No. 137 (citing W. Va. Code § 29-12A-5(a)(5)). Plaintiff claims this provision only applies to the "formulation and implementation of policy related to how police, law enforcement, or fire protection is to be provided." Pl.'s Resp. to Other Defs.' Mot. for Summ. J. at 9, ECF No. 154 (quoting Syl. Pt. 3, *Beckley v. Crabtree*, 428 S.E.2d 317 (W. Va. 1993)). Defendant also claims Plaintiff cannot maintain this action, as West Virginia does not recognize negligent spoliation of evidence as a stand-alone tort when it results from the negligence of a party to a civil action. Other Defs.' Mem. of L. in Supp. of Their Mot. for Summ. J. at 14, ECF No. 137. This is because "the adverse inference instruction and the sanctions provided by West Virginia Rule of Civil Procedure 37 are sufficient remedies when a party to an action negligently fails in his or her duty to preserve relevant evidence." *Id.* (quoting *Hannah*, 582 S.E.2d at 568). Plaintiff only responds to this argument via

-13-

footnote, in which she contends the claim is permissible because the City is a party due to statutory vicarious liability, rather than independent tortious acts. Pl.'s Resp. to Other Defs.' Mot. for Summ. J. at 11 n.4, ECF No. 154.

The Court need not reach the issue of whether the spoliation claim can stand against a party in this action, as Defendant City of Kenova is shielded from liability by § 29-12A-5(a)(5). As this Court and others have found, § 29-12A-5(a)(5) protects political subdivisions "from the negligent actions of their employees in providing police protection." *Daniels v. Wayne Cnty.*, No. 3:19-0413, 2020 WL 2543298, at *4 (S.D.W. Va. May 19, 2020) (citing *Taylor v. Clay Cnty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, *6 (S.D.W. Va. Feb. 24, 2020)); *see Fields v. King*, 576 F. Supp. 3d 392, 403 (S.D.W. Va. 2021); *Means v. Peterson*, No. 2:20-CV-00561, 2020 WL 6702036, at *4 (S.D.W. Va. Nov. 13, 2020) ("A municipality is not liable for damages that result from the negligence of a municipal employee when that negligence occurs in furtherance of providing police, law enforcement, or fire protection."). Both Officer Newman and Chief Sullivan were municipal employees providing police protection at the time of the allegedly negligent acts. The City of Kenova, as a political subdivision, is therefore shielded from any claims of negligence resulting from their actions. The Court, therefore, **GRANTS** Defendant City of Kenova's Motion for Summary Judgment as to Count VI. ECF No. 136.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants City of Kenova, Bob Sullivan, and John/Jane Does' Motion for Summary Judgment (ECF No. 136). The Court **GRANTS** this Motion insofar as it requests dismissal of Counts III, IV, and VI against Defendants City of Kenova and John/Jane Does and **DENIES** it insofar as it requests dismissal of Count V against Defendant Sullivan. *Id.* Additionally, the Court **DENIES**

Defendant's Newman's Motion to Dismiss Counts I and II (ECF No. 138). Finally, the Court **DISMISSES** Counts III, IV, and VI of this action.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        May 19, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE